*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *LITTLE BAY LOBSTER, LLC,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| *v.* | ) | *No. 1:20-cv-00246-DBH* |
| | ) | |
| *JOSIAH J. RHYS,* | ) | |
| | ) | |
| *Defendant* | ) | |

### MEMORANDUM DECISION AND ORDER ON NONPARTY'S MOTION TO QUASH AND PLAINTIFF'S MOTION TO COMPEL

Nonparty Greenhead Lobster, LLC ("Greenhead") moves to quash a subpoena served upon it by plaintiff Little Bay Lobster, LLC ("Little Bay"), and Little Bay cross-moves to compel Greenhead to respond to the subpoena, in this action arising from defendant Josiah J. Rhys' alleged breach of an agreement to sell his lobster catch exclusively to Little Bay.  *See* Motion to Quash or Modify Subpoena by Non-Party Greenhead Lobster, LLC ("Motion to Quash") (ECF No. 23); Plaintiff's Combined Opposition to Greenhead Lobster, LLC's Motion to Quash or Modify Subpoena and Motion to Compel ("Motion to Compel") (ECF No. 28).  For the reasons that follow, on the showing made, I grant the Motion to Quash and deny the Motion to Compel.

### I.  Applicable Legal Standards

Federal Rule of Civil Procedure 45 provides, in relevant part, "To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information[.]"  Fed. R. Civ. P. 45(d)(3)(B)(i). In that circumstance, the court "may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party . . . (i) shows a substantial

1

need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated."   Fed. R. Civ. P.

45(d)(3)(C).

"There is no absolute privilege that immunizes trade secrets and similar confidential

information from discovery."  *Cutler v. Lewiston Daily Sun*, 105 F.R.D. 137, 140 (D. Me. 1985).

"In order to resist discovery of a trade secret, a party [or subpoenaed person] must first establish

that the information sought is indeed a trade secret and then demonstrate that its disclosure might

be harmful."  *Id*.  "As with any protective-order motion, the showing should be made with

appropriate specifics."  8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal*

*Practice and Procedure* (*FPP*) § 2043, at 244 (3d ed. 2010) (footnote omitted).[1]

"Once these requirements are met, the burden shifts to the [requesting] party to establish

that discovery of the trade secrets is relevant and necessary to the action."  *Cutler*, 105 F.R.D. at

140.   Analysis of whether this burden is met "should include consideration of all pertinent

circumstances, including dangers of abuse, good faith, and availability of other means of proof."

8A *FPP* § 2043, at 248-49 (footnote omitted).

"The district court then must balance the need for protection of the trade secrets against the

claim of injury resulting from disclosure."  *Cutler*, 105 F.R.D. at 140.  "Discovery should be denied

---

[1] "A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)."  *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015), *modified on other grounds on recon.,* 160 F. Supp. 3d 431 (D. Mass. 2016) (citation and internal quotation marks omitted).  Pursuant to Rule 26(b)(1), unless otherwise limited by court order, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable."  *Id.*

if proof of relevancy or need is not established, but if relevancy and need are shown, the trade

secret should be disclosed." *Id*. "[I]f the trade secrets are deemed relevant and necessary, the

appropriate safeguards that should attend their disclosure by means of a protective order are also

a matter within the trial court's discretion." *Centurion Indus., Inc. v. Warren Steurer & Assocs.*,

665 F.2d 323, 326 (10th Cir. 1981); *see also* Fed. R. Civ. P. 45(d)(3)(C).

Rule 45 also provides, in relevant part, that if a person commanded to produce documents

or tangible things objects to their production, "[a]t any time, on notice to the commanded person,

the serving party may move the court for the district where compliance is required for an order

compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). An order requiring such

production "must protect a person who is neither a party nor a party's officer from significant

expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). *See also* Fed. R. Civ. P.

45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable

steps to avoid imposing undue burden or expense on a person subject to the subpoena.").

## II. Factual Background

Little Bay alleges that:

1.      Rhys represented to Little Bay that, if Little Bay or an affiliate purchased the F/V

William Bowe from an affiliate of Rhys, Rhys would sell all lobsters caught aboard the F/V Miss

Brooke to Little Bay for a period of at least two years.  Plaintiff's Second Amended Complaint

(SAC) (ECF No. 18) ¶ 14.

2.      In reliance on that representation, Little Bay arranged for an affiliate to purchase

the F/V William Bowe from the Rhys affiliate, whereupon the parties entered into the

contemplated exclusive fishing agreement "for a minimum of two years, from March 19th 2020

through March 2022[.]" *Id*. ¶¶ 15-16 & Exhs. A (ECF No. 18-1) & B (ECF No. 18-2) thereto.

3.      Specifically, Rhys agreed that, for a two-year period, he would sell the lobster catch from his fishing vessel, the F/V Miss Brooke, exclusively to Little Bay and purchase fuel, bait, and related supplies and products exclusively from Little Bay at its Stonington, Maine, dock prices. SAC ¶ 5.

4.      Rhys "had no intent to comply with his contractual obligation to [Little Bay], has not begun to fish for [Little Bay] and continues, and at all times intended, to fish for Hugh Reynolds'/Greenhead Lobster." *Id*. ¶ 17.

Little Bay sues Rhys for breach of contract, negligent misrepresentation, and fraudulent misrepresentation, seeking, *inter alia*, "such damages as are reasonable under these circumstances." *Id*. ¶¶ 5-18.

On December 29, 2020, Little Bay served a subpoena and notice of deposition upon Greenhead. *See* Motion to Quash at 1-2; Exh. 2 (ECF No. 23-2) thereto.  As amended on January 11, 2021, the notice of deposition commands Greenhead to designate one or more persons to testify on its behalf pursuant to Federal Rule of Civil Procedure 30(b)(6) with respect to:

> 1.      The relationship between Greenhead Lobster, LLC and Josiah Rhys relating to the purchase of lobsters and other fish by Greenhead Lobster, LLC from Josiah Rhys covering the period from January 1, 2016 to the present.
>
> 2.      All monies paid by Greenhead Lobster, LLC to Josiah Rhys during the period January 1, 2016 to the present.
>
> 3.      The relationship between Greenhead Lobster, LLC and Josiah Rhys relating to the sale of bait and any other products by Greenhead Lobster, LLC to Josiah Rhys covering the period from January 1, 2016 to the present.

Motion to Quash at 2; Exh. 3 (ECF No. 23-3) thereto at 1-2.  The notice of deposition also requests that Greenhead produce:

> 1.      All documents reflecting or relating to all agreements between Greenhead Lobster, LLC and Josiah Rhys relating to the purchase and sale of

lobsters and related products covering the period from January 1, 2016 to the present.

  2. All documents reflecting or relating to the quantity and/or pounds of lobster purchased by Greenhead Lobster, LLC from Josiah Rhys from January 1, 2016 to the present.

  3. All documents relating to all of the amounts paid by Greenhead Lobster, LLC to Josiah Rhys from January 1, 2016 to the present.

  4. All documents reflecting the amounts charged or debited against the account of and/or paid by Josiah Rhys to Greenhead Lobster, LLC for bait and related purchases from January 1, 2016 to the present.

  5. All daily fuel, bait and lobster slips and other records relating to Greenhead Lobster, LLC and Josiah Rhys covering the period from January 1, 2016 to the present.

  6. All monthly landings reports filed by Greenhead Lobster, LLC with the Maine DMR reflecting the lobsters purchased from and/or landed by Josiah Rhys from January 1, 2016 to the present.

Exh. 3 to Motion to Quash at 3-4.

On January 12, 2021, Greenhead filed the instant motion to quash, *see* Motion to Quash, and interposed objections to Little Bay's document requests on several grounds, including that the requests sought confidential, proprietary and/or trade secret information and were vague, ambiguous, overly broad, unduly burdensome, and/or disproportionate to the needs of the case, *see* Exh. 1 (ECF No. 33-1) to Non-Party Greenhead Lobster, LLC's Combined Reply Memorandum in Support of Motion to Quash and Response to Motion to Compel ("Reply") (ECF No. 33).

Greenhead is a Maine company based in Stonington, Maine.  Declaration of Hugh Reynolds ("Reynolds Decl."), Exh. 1 (ECF No. 23-1) to Motion to Quash, ¶ 2.  Its sole member is Hugh Reynolds.  *Id*. ¶ 1.  Greenhead sources lobster and, to a lesser extent, scallops from independent local Maine fishermen, which it then sells and distributes wholesale across the United

States and to international markets.  *Id.* ¶ 2.  It also sells bait and fuel to the fishermen from whom it purchases its seafood products.  *Id.*

In Reynolds' experience, this is a very competitive industry.  *Id.*  Little Bay is Greenhead's direct competitor.  *Id.* ¶ 3.  In fact, Little Bay has a place of business in close proximity to that of Greenhead and is one of its major competitors.  *Id.*  Rhys is one of the vendors from whom Greenhead has purchased seafood products and to whom it has sold bait, fuel, and related products. *Id.* ¶ 4.

For Greenhead, information about the quantity and pricing of products that it purchases from and sells to its vendors, including Rhys, is very valuable and confidential business information.  *Id.* ¶ 5.  Greenhead takes precautionary measures to limit the number of people at Greenhead who even know about such sales and pricing data.  *Id.*  For instance, it limits the availability of that sort of information to only those with a business "need to know."  *Id.*  Of about 140 employees, only three or four, including Reynolds, have access to that information.  *Id.* Relatedly, Greenhead stores that data on software that is password-protected so that unauthorized people cannot obtain access to it.  *Id.*  Therefore, its sales and pricing information is not publicly known or available.  *Id.*

The pricing and sales data related to products that Greenhead buys from and sells to its vendors is economically valuable to Greenhead.  *Id.* ¶ 6.  If a competitor such as Little Bay were to obtain that data, it could use that information to Greenhead's detriment.  *Id.*  Competitors could use this information to compete unfairly with Greenhead, for example, by undercutting its prices and/or offering more favorable terms to the fishermen from whom it sources its products.  *Id.*

### III. Discussion

As a threshold matter, Little Bay contends that Greenhead falls short of demonstrating either that the information at issue constitutes a "trade secret" that has independent economic value or that Greenhead would be harmed by its disclosure. *See* Motion to Compel at 3-4. With respect to the both points, it underscores that Greenhead (i) "has provided no evidence that it protects the information beyond its office space by enforcing agreements with its vendors or employees restricting disclosure of its pricing terms or that disclosure by vendors and employees is prohibited" and (ii) "has not suggested that it prohibits [a] lobsterman from whom it purchases lobsters from disclosing the price he receives from Greenhead for his catch." *Id*. at 5.

I conclude that Greenhead's showing suffices. First, as Greenhead notes, *see* Reply at 1-2, it need not prove that its information constitutes a "trade secret": Rules 26 and 45 specifically contemplate the protection of "other confidential . . . commercial information[,]" Fed. R. Civ. P. 26(c)(1)(G), 45(d)(3)(B)(i). *See also, e.g*., 8A *FPP* § 2043, at 242-43 ("There has been some attempt to restrict protection to 'true' trade secrets. . . . On its face, [Rule 26(c)(1)(G)] goes beyond trade secrets to provide protection for 'confidential research, development, or commercial information.' While not unlimited, this is surely an open-ended series of terms that need not be limited to 'true' trade secrets.") (footnotes omitted); *Verisign, Inc. v. XYZ.com, LLC,* C.A. No. 15-mc-175-RGA-MPT, 2015 WL 7960976, at \*4 (D. Del. Dec. 4, 2015) (While there is "no absolute privilege for trade secrets and similar confidential information[,]" "discretion should be exercised to avoid the unnecessary disclosure of confidential material.") (footnotes and internal quotation marks omitted).

Second, "courts have generally viewed sales data as trade secrets or confidential information." *Nelson-Ricks Cheese Co. v. Lakeview Cheese Co., LLC*, Case No. 4:16-cv-00427-

DCN, 2017 WL 4839375, at *2 (D. Idaho Oct. 26, 2017).  "The underlying information is therefore confidential . . . under Fed. R. Civ. P. 45(c)(3)(B)(i)."  *Id.*

Third, Greenhead adequately demonstrates that it has safeguarded its pricing and sales data by sharply limiting access to such information within the company, including password-protecting computerized data, and that it would be harmed by disclosure of its pricing and sales data to its direct competitor in Stonington, Maine.  Reynolds avers that "[i]f a competitor such as Little Bay" were to obtain that data, it "could use that information" to Greenhead's "detriment[,]" for example, "by undercutting [its] prices and/or offering more favorable terms to the fishermen from whom [it] source[s] [its] products."  Reynolds Aff. ¶ 6.  That showing of harm is made with "appropriate specifics."  8A *FPP* § 2043, at 244 (footnote omitted).  As Greenhead argues, in the circumstances described by Reynolds, the potential harm from Little Bay's acquisition of Greenhead's confidential sales data is "plain on its face."  Reply at 2; *see also, e.g.*, *Verisign*, 2015 WL 7960976, at *4 ("Disclosure to a competitor is presumptively more harmful than disclosure to a non-competitor.") (footnote omitted).

The burden, hence, shifts to Little Bay "to establish that the information is sufficiently relevant and necessary to [its] case to outweigh the harm disclosure would cause to the person from whom [it] is seeking the information."  8A *FPP* § 2043, at 248 (footnote omitted).  "The determination of substantial need is especially important in the context of enforcing a subpoena where confidential commercial information is sought from a non-party."  *Edwards v. Cal. Dairies, Inc.*, No. 1:14-mc-00007-SAB, 2014 WL 2465934, at *5 (E.D. Cal. June 2, 2014), *recon. denied*, 2014 WL 3420991 (E.D. Cal. July 14, 2014).

Little Bay's showing falls short.

First, Little Bay does not explain, and it is not self-evident, why it needs to know the prices Greenhead paid Rhys for lobsters or charged him for supplies.  The measure of Little Bay's lost profits seemingly most accurately would be derived from what *it* would have paid Rhys for lobsters and charged him for supplies during the period at issue.  Second, Little Bay does not explain, and it is not self-evident, why, for purposes of calculating its damages, it needs any data for the period prior to March 19, 2020, the date on which Rhys promised to commence doing business exclusively with Little Bay for at least two years.  Third, and finally, Little Bay does not explain whether it sought information from defendant Rhys – whose dealings with Greenhead are at the heart of this lawsuit – before turning to nonparty Greenhead.

## IV.  Conclusion

On the showings made by both Greenhead and Little Bay, I **GRANT** the Motion to Quash and **DENY** the Motion to Compel.

## *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 25th day of February, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

9